Argued March 17, affirmed March 31, rehearing denied May 19, 1914.

# ELWERT *v.* REID.

(139 Pac. 918; 141 Pac. 540.)

**Vendor and Purchaser—Bona Fide Purchasers—Notice.**

1. Where grantees of the holder of the legal title to land had no knowledge or notice that the grantor held as trustee for the plaintiff, the grantees took fee-simple title, and the plaintiff is not entitled to any relief against them.

> [As to sales and conveyances by trustees, see note in 19 Am. St. Rep. 266.]

**Quieting Title—Right to Relief—Title of Defendants.**

2. In a suit to quiet title to land, where the plaintiff had no title as against defendants, it is not necessary to determine the rights of defendants to the property.

## ON PETITION FOR REHEARING.

**Trusts—Enforcement—Title to Real Property.**

3. In a suit to cancel a deed, in which the complaint alleges that at the date of the deed the grantor held the premises as trustee for plaintiff, any title acquired by the alleged trustee by virtue of a decree in another suit rendered subsequent to such date is unavailing to plaintiff in the present suit, in the absence of any evidence that such title vested in her.

**Quieting Title—Decree—Construction.**

4. The plaintiff in a suit to quiet title does not acquire title by a decree that she is the owner in fee simple; but such a decree is conclusive evidence of title in her as against defendants and their privies.

**Judgment—Conclusiveness—Persons Concluded.**

5. Under Section 756, L. O. L., making a decree conclusive as to every matter directly determined between the parties and their representatives and successors in interest by title subsequent to the commencement of the suit, litigating for the same thing, under the same title, and in the same capacity, a decree in a suit to quiet title that the plaintiff is the owner in fee simple, is not evidence of title in her as against one holding title under conveyance by her.

From Multnomah: WILLIAM N. GATENS, Judge.

Department 1. Statement by MR. JUSTICE RAMSEY.

This is a suit in equity by J. B. Elwert against William Reid and M. W. Parelius to obtain a decree setting aside a deed of conveyance of certain real property in the City of Portland, and to quiet title to

certain other real property in said city. The court below rendered a decree for the defendants and the plaintiff appeals.      AFFIRMED.      REHEARING DENIED.

For appellant there was a brief and an oral argument by *Mr. George S. Shepherd.*

For respondents there was a brief over the names of *Messrs. Boothe & Richardson* and *Messrs. Malarkey, Seabrook & Stott,* with oral arguments by *Mr. Ephraim B. Seabrook* and *Mr. J. F. Boothe.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

On the 5th day of August, 1909, Mrs. J. B. Elwert commenced this suit against the defendants. By her complaint she alleges that she has been and now is the actual owner of the following described real premises in Multnomah County, State of Oregon: Lot 5 in block 2 in East Portland, according to the map and plat thereof, recorded in Multnomah County— and also of the following described premises: Beginning at a point 100 feet west of the southeast corner of said block 2, and running thence west to the low-water mark of the Willamette River; thence running north along the low-water mark of the Willamette River 50 feet; thence east to a point 100 feet west and 50 feet north of the southeast corner of said block 2; thence south to the point of beginning; together with the exclusive right to wharf out to the harbor line of the Willamette River, abutting said premises.

The plaintiff further alleges that on the 21st day of August, 1906, the plaintiff's daughter, Carrie M. Elwert, held the title to said premises as trustee for the plaintiff, and on said 21st day of August, 1906, H. P. Palmer induced said Carrie M. Elwert to sign some

form of a paper, which was afterward filled in as a deed to said lot 5, block 2, in East Portland, and is now recorded in book 369 on page 73 of Deed Records of Multnomah County, Oregon, and purports to convey to M. W. Parelius said lot 5 in block 2 in East Portland, according to the plat thereof.

The complaint alleges, also, that said H. P. Palmer and M. W. Parelius, at the time said paper was signed by said Carrie M. Elwert, knew that said Carrie M. Elwert held the title to said lot 5 in block 2 as trustee for this plaintiff, and knew, also, that she had no right to convey the same, without the consent of the plaintiff, and induced her to sign said paper on the representation that the same was to be held by said H. P. Palmer as trustee for this plaintiff, and not as an actual conveyance of lot 5 in block 2.

The complaint alleges, also, that at the time said paper was so signed by Carrie M. Elwert, said Palmer paid her the sum of $3,600, as a guarantee of good faith in holding said title, as trustee of this plaintiff, and that this plaintiff has at all times refused, and now refuses, to accept said sum as a consideration for said premises, or otherwise accept it, *except to insure the good faith of said H. P. Palmer.*

The complaint alleges, also, in substance, that on May 19, 1909, said Parelius executed a pretended deed, attempting to convey to the defendant William Reid said lot 5 and said other real premises; but that said Parelius never had any right, title, or interest in or to said premises, or any color of title to the premises last described, or any claim thereto, and that by said pretended deed Parelius has attempted, and is now attempting, to deprive the plaintiff of her real estate, and said deed casts a cloud upon the same.

The complaint alleges, also, that the defendants knew, at all times mentioned in the complaint, that

Carrie M. Elwert held the title to said premises only as trustee for the plaintiff, and that the plaintiff would not, and did not, ratify said transfer.

The complaint alleges, also, that Carrie M. Elwert is willing, and has been willing, at all times, to return to said Palmer, or to whomsoever the court will determine is entitled to it, said sum of $3,600. The complaint asks for a decree annulling the said deed made by Carrie M. Elwert to M. W. Parelius to said lot 5 in block 2 in East Portland, and quieting the plaintiff's title to said other premises, described *supra,* and for general relief.

The defendants filed an answer, denying every allegation of the complaint, and alleging title to said premises in the defendant Reid, etc. A reply denied the affirmative matter of the answer. The court below, after hearing the evidence, rendered a decree in favor of the defendants.

The evidence shows that both parties claim title through a sheriff's deed made by George C. Sears, sheriff of Multnomah County, to Carrie N. Elwert, in the case of *J. B. Elwert* v. *Mary E. Knott* and others, upon a sale made upon a writ of execution in said cause, issued out of the Circuit Court of Multnomah County, and dated September 16, 1895. This deed bears date of March 7, 1896, and it states that the grantee paid for the real premises conveyed to her, by said deed of conveyance, $3,000.

There appears to be a clerical error in the name of said grantee. Her name is Carrie *M.* Elwert, and it is written in said deed as Carrie *N.* Elwert; but there is no doubt that Carrie *M.* Elwert was the purchaser of said premises, and that she received said deed.

The sheriff's deed described the real premises, thereby conveyed, as follows:

70 Or.—21

"All the right, title, interest, and claim which the said defendants in said suit (Mary E. Knott and others) * * had on the 16th day of September, 1895, or at any time afterward, or now have, in or to all of these certain lots, pieces, or parcels of land, situated, lying, and being in said county of Multnomah, State of Oregon, and more particularly described as follows, to wit: Lot 5 in block 2 in the City of Portland, Multnomah County, Oregon, together with all and singular hereditaments and appurtenances thereto belonging, or in any wise appertaining."

It is important to note that both parties claim through said deed. It conveyed lot 5 in block 2, in East Portland, "together with all and singular the hereditaments and appurtenances thereto belonging, or in any wise appertaining."

On August 21, 1906, Carrie M. Elwert conveyed by a warranty deed to M. W. Parelius, and his heirs, the following described real property:

"All of lot numbered five (5) in block numbered two (2) in the City of East Portland (now within the corporate limits of the City of Portland), according to the duly recorded map of said City of East Portland, together with all and singular the tenements, hereditaments, and appurtenances thereunto belonging, or in any wise appertaining, and also all her estate, right, title, and interest, including dower and claim of dower."

It will be observed that the last-named deed did not attempt to convey any land not described in said sheriff's deed.

On May 19, 1909, M. W. Parelius and wife made a deed to the defendant William Reid, purporting to convey to him said lot 5 in block 2 in East Portland, "together with the premises, beginning at high-water mark of the Willamette River on the western prolongation of the north line of East Washington Street, and running thence westerly to the United States Har-

bor line of the Willamette River; thence northerly along the harbor line 50 feet; thence east to the high-water mark of the Willamette River; thence south 50 feet, to the point of beginning.''

1. We have read the evidence in this case, and we find therefrom that Carrie M. Elwert, at the said sheriff's sale, purchased, as stated, *supra,* said lot 5 in block 2 in East Portland, and received a sheriff's deed conveying said real property to her, and that she, on the 21st day of October, 1905, entered into a written contract by which she agreed to sell and convey said property to H. P. Palmer, or his assigns, for $3,600. Palmer paid her, at the time of the execution of said contract, $500 of said purchase price, and the remainder of said purchase price he paid on August 20, 1906. He paid her interest on said deferred payment.

It is not necessary to decide whether said Carrie M. Elwert purchased and held said lot in trust for her mother or not, as the preponderance of the evidence shows that neither H. P. Palmer, nor M. W. Parelius, nor William Reid had any knowledge or notice that she was holding said property in trust for her mother, or that her mother had, or claimed to have, any interest in said premises. They were purchasers of said premises in good faith, and for valuable considerations. The deed to Carrie M. Elwert was an absolute conveyance, and did not describe her as trustee, or mention any trust.

In said contract to convey said real premises to said H. P. Palmer or his assigns by Carrie M. Elwert, it was provided as follows:

''It is also understood and agreed that all lands, rights, and privileges owned or claimed by said Carrie M. Elwert between Water Street and the Willamette River is also to be conveyed by Carrie Elwert to said H. P. Palmer.''

This would cover all property owned by her in said block 2 that is not covered by the river. All of said deeds of conveyance were duly recorded.

Palmer, Parelius and Reid all testified that they had no knowledge or notice that the plaintiff, J. B. Elwert, either had or claimed to have any right or interest in the property in dispute, and the weight of the evidence on that point is with the defendants. Hence the deed of conveyance made by Carrie M. Elwert to M. W. Parelius and the deed made by Parelius and wife to the defendant William Reid vest the title in fee to said lot 5 of said block 2 in East Portland in the defendant William Reid. We find, also, that the plaintiff was not, at the date of the commencement of this suit, or at any time since that date, the owner of the property described in the complaint, or of any part thereof, and that she was not and is not entitled to any of the relief prayed for in the complaint.

We find, also, that the defendant William Reid was, at the date of the commencement of this suit, the owner in fee simple of all of lot numbered 5 in block numbered 2 in the City of East Portland (now within the corporate limits of the City of Portland), according to the duly recorded maps of said City of East Portland, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any way appertaining. The property last above described is the property which Carrie M. Elwert obtained by the sheriff's deed referred to *supra,* and which she conveyed to M. W. Parelius as stated *supra.* Parelius conveyed said premises to William Reid.

2. We do not find it necessary to discuss the rights of the defendant William Reid in any property, excepting the said lot 5 in block 2 in East Portland. It is clear from the evidence that, as to the defendants Parelius and William Reid, the plaintiff never had any

right or interest in or to said lot 5 in block 2 in East Portland, or the other real premises described in the complaint, and this disposes of all the real issues in this case.

The decree of the court below holding that the plaintiff has no right, title or interest in or to said lot 5 in block 2 in East Portland, or any part thereof, or in or to any of the other real property described in the complaint, and that the defendant William Reid is the owner in fee of said lot 5 in said block 2 in East Portland, together with all and singular the tenements, hereditaments and appurtenances thereunto belonging, or in any way appertaining, is affirmed; and this finding applies, also, to the plaintiff's heirs at law. The plaintiff's complaint is dismissed.

The plaintiff died on December 25, 1912, and C. P. Elwert and Carrie M. Elwert were substituted herein for the plaintiff as her sole heirs, and the appeal was prosecuted by them.                                    AFFIRMED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE MOORE and MR. JUSTICE BURNETT concur.

--------

Rehearing denied May 19, 1914.

ON PETITION FOR REHEARING.

(141 Pac. 540.)

Department 1.  MR. JUSTICE RAMSEY delivered the opinion of the court.

The petition for rehearing says that J. B. Elwert, now deceased, who brought this suit, did not obtain title to the real premises in dispute through the sheriff's deed referred to in the opinion of the court,

handed down on March 31st last, but that her title "was derived solely through the decree in the case of *Elwert* v. *Marley,*" and expresses the opinion that said decree was overlooked by the court in rendering the decree of affirmance. However, we did not overlook that decree, but formed the conclusion that it did not aid the plaintiff.

This suit was brought by J. B. Elwert, the mother of Carrie M. Elwert, and, after it was commenced, she died, and Carrie M. Elwert and C. P. Elwert were substituted in her stead as plaintiffs.

This suit was brought to obtain a decree of cancellation of a deed of conveyance dated August 21, 1906, made by Carrie M. Elwert to M. W. Parelius, conveying to him, for $3,600, lot 5 in block 2 of the City of East Portland, with its appurtenances, and quieting the alleged title of J. B. Elwert to other lands described in the complaint, and in the petition for rehearing.

J. B. Elwert never had a deed conveying to her any of the land described in the complaint, nor did she have any written evidence of title thereto. Her daughter, Carrie M. Elwert, purchased said lot 5 in block 2 in East Portland at sheriff's sale and received a sheriff's deed conveying said lot to her, and she, with the knowledge of J. B. Elwert, entered into a written contract to sell said lot to H. P. Palmer or his assigns for $3,600. Palmer paid her said sum for said lot, and in doing so he was acting as agent of M. W. Parelius. Before Carrie M. Elwert conveyed said lot to M. W. Parelius as assignee of Palmer, she, by the agreement with Palmer, permitted Palmer to bring a suit in equity, in her name, as plaintiff, against P. H. Marley, H. E. Noble, and J. Olsen, to quiet the title of said Carrie M. Elwert to the premises described in the petition for a rehearing, etc. The complaint in said suit

alleged that Carrie M. Elwert (not J. B. Elwert) owned said property in fee, etc., and that Marley, Noble and Olsen claimed some right or title in or to said premises, and that each of them denied the rights of Carrie M. Elwert in said premises, and that the claims of said parties in or to said premises were without any foundation whatever. In said suit said defendants answered, denying the plaintiffs' title to said premises, and alleging title in Noble, and claiming that Noble obtained his title to said premises through purchase at a tax sale and deeds of conveyance made in tax proceedings, etc.

The Circuit Court of Multnomah County, in said suit, rendered a decree that Carrie M. Elwert was the owner of said premises, in fee simple, and that the defendants therein had no title to any portion of said premises, and that said tax deeds were void, etc.

The petition for rehearing contends that the decree above referred to vested the title to said premises in Carrie M. Elwert, and that she held said title as trustee of her mother, J. B. Elwert.

3. If, as counsel for the plaintiffs contends, the decree in *Elwert* v. *Marley* vested the title to the property in dispute in the plaintiff in that suit (Carrie M. Elwert), how did her mother, J. B. Elwert, get title to it? Counsel asserts that his client does not claim title to said premises through the sheriff's deed referred to in the former opinion, and that she obtained her title by virtue of said decree. If the decree vested the title in Carrie M. Elwert, she still owns it, unless she has conveyed it away. It is not claimed that she conveyed it to J. B. Elwert, her mother. Then how did her mother get title, if she had any? The alleged trust referred to in the complaint and in the evidence had nothing to do with said decree. It applied only to the property purchased by Carrie M. Elwert at the sher-

iff's sale, and had nothing to do with the decree in *Elwert* v. *Marley,* which was rendered long after the purchase of said property at sheriff's sale. There is no evidence that the suit of *Elwert* v. *Marley* was begun or prosecuted for the benefit of J. B. Elwert. The evidence shows that said suit was brought for the benefit of Palmer or his assigns, Parelius, and that Palmer paid the expenses thereof.

4. The suit of *Elwert* v. *Marley* was brought against Marley, and Noble, and Olsen, and the decree therein is binding upon them and their privies, and it is a bar to all claims that said parties or their privies might make to said premises as against Carrie M. Elwert or her privies.

The complaint in said suit alleged, and the court by its decree found, that Carrie M. Elwert was the owner in fee of said premises, and that neither of the defendants therein had any interest in said premises. In other words, Carrie M. Elwert had, according to said decree, when she filed her complaint, the title to said premises, and the defendants had no interest therein. How, then, did or could Carrie M. Elwert obtain title to said premises *by said decree?* She did not obtain it from the defendants, because the decree found that they had no interest in the premises.

5. A decree is conclusive between the parties thereto, their representatives and successors in interest, by title subsequent to the commencement of the suit, litigating for the same thing, under the same title, and in the same capacity, as to every matter directly determined by such decree: Section 756, L. O. L.

As between Carrie M. Elwert and her privies and Marley, Noble and Olsen and their privies, said decree is conclusive evidence that Carrie M. Elwert was the owner of said premises in fee simple at the date of

the rendition of said decree; but, as to the other persons, it is without effect.

In the complaint in this suit, the plaintiff J. B. Elwert alleges that on the 21st day of August, 1906, the plaintiff's daughter, Carrie M. Elwert, held the title to said premises (including the premises described in the petition for a rehearing) as trustee for the plaintiff. The decree in *Elwert* v. *Marley* was not rendered until September 24, 1906. Hence, according to the complaint, Carrie M. Elwert held the title to said premises in trust for J. B. Elwert *before said decree was rendered.*

We do not think that Carrie M. Elwert obtained any title to the property in dispute by virtue of the decree in *Elwert* v. *Marley,* but that said decree would be conclusive evidence of title in her in a suit between her and the defendants in said suit and their privies. It is not evidence of title in her, as against the defendant William Reid.

If it were true that she derived title to the premises in dispute by said decree, that fact could not benefit the plaintiffs in this case, because there is not a scintilla of evidence that said title vested in J. B. Elwert.

We believe that the conclusion reached in the original opinion is correct, and therefore the petition for a rehearing is denied.

Affirmed.    Rehearing Denied.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Burnett concur.